IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION


UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )   3:09CR52-7
                                   )   JUNE 7, 2010
       vs                          )
                                   )
ASDRUBAL RODRIGUEZ CORREA,         )
                                   )
                Defendant.         )
_____/

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE FRANK D. WHITNEY
UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE UNITED STATES:     STEVE KAUFMAN, ESQ.
                           U. S. Attorney's Office
                           227 W. Trade Street
                           Suite 1700
                           Charlotte, NC 28202


FOR THE DEFENDANT:         RANDOLPH M. LEE, ESQ.
                           P. O. Box 77005
                           Charlotte, NC 28271



Proceedings reported and transcript prepared by:


JOY KELLY, RPR, CRR
U. S. Official Court Reporter
Charlotte, North Carolina
704-350-7495

**MONDAY, JUNE 7, 2010**

1
2          (Court called to order at 2:00 p.m. and
3  defendant present in courtroom.)
4          (Spanish-language interpreter, Jackie Gonzalez,
5  interpreting for Mr. Correa.)
6          THE COURT:  Good morning.
7          We're here in United States v. Correa, case
8  3:09CR52, for the defendant's sentencing.  I want to welcome
9  Mr. Lee into the courtroom.
10          MR. LEE:  Pleasure to be here, Your Honor.  Thank
11  you.
12          THE COURT:  And Mr. Kaufman has been here all
13  morning.  We have been sentencing the defendant's
14  co-conspirators in this case all morning, so the Court is
15  well acquainted with the facts of this case, both from the
16  sentencings this morning as well as from the trial back in
17  September.
18          The defendant was found guilty by a jury of his
19  peers on September 29th.  He was found guilty of conspiracy
20  to possess with intent to distribute marijuana, using and
21  carrying a firearm during and in relation to a drug
22  trafficking crime, possession of a firearm by an individual
23  with a prior violence conviction, and possession of a
24  firearm by illegal alien.
25          After the defendant's conviction, the defendant's

1    case was referred to the United States Probation Office for

2    the Presentence Investigation and Report.  The Court has

3    received a copy of that report.  I would like to ask the

4    defendant if he'd stand up briefly.

5         Sir, have you received a copy of the United States

6    Probation Office's final Presentence Investigative Report?

7              DEFENDANT CORREA:  (Through interpreter)  Yes.

8              THE COURT:  Have you had someone translate this

9    report for you?

10             DEFENDANT CORREA:  Yes.

11             THE COURT:  Do you understand this report?

12             DEFENDANT CORREA:  Yes.

13             THE COURT:  Have you had an opportunity to go over

14   the report with Mr. Lee, your attorney?

15             DEFENDANT CORREA:  Yes.

16             THE COURT:  And has Mr. Lee answered all your

17   questions about this Presentence Report?

18             DEFENDANT CORREA:  Yes.

19             THE COURT:  Sir, you may sit back down.

20             MR. LEE:  For the record, I did that through a

21   translator.  I did not communicate directly in Spanish.

22             THE COURT:  Thank you, Mr. Lee.

23             Mr. Lee, from my review of the record you have one

24   outstanding objection to the Presentence Report.

25             MR. LEE:  I do, and it really kind of follows I

```
 1    think, Your Honor, the objections we filed at trial
 2    regarding the 404(b) matter.
 3               THE COURT:  And I was thinking of the same
 4    analogy.
 5               MR. LEE:  You know, so that really is the thrust
 6    of the objection, more to reserve it for appellate review,
 7    404(b).  I didn't want to waive that.
 8               THE COURT:  I appreciate that.
 9               Well, the Court believes the law is that any
10    evidence foreseeable to defendant of other drugs besides the
11    drug of conviction can be considered in the Guideline
12    calculation as to the quantity of drugs sold so long as
13    there's sufficient evidence by a preponderance of the
14    evidence.
15               Mr. Kaufman, anything you would like to add to the
16    evidence with regard to cocaine?
17               MR. KAUFMAN:  To add in terms of evidence?
18               THE COURT:  Right.
19               MR. KAUFMAN:  No, Your Honor.  I think that the
20    trial testimony from the cooperators fully satisfies the
21    fact that the cocaine conspiracy was intertwined with the
22    marijuana conspiracy, and that Mr. Correa had previously
23    used firearms to watch over cocaine loads and that's
24    consistent with what his responsibility was for the
25    marijuana in this case.
```

1          THE COURT:  Well, let me ask you, you used the

2     phrase "the cocaine conspiracy was intertwined with the

3     marijuana conspiracy."

4          MR. KAUFMAN:  Well, Your Honor, I shouldn't --

5          THE COURT:  Let's be careful about our words.  Was

6     it one big conspiracy that had two drugs and you charged

7     marijuana because the government -- or the grand jury felt

8     there was sufficient evidence beyond a reasonable doubt that

9     you could convince a petite jury and you didn't charge

10    cocaine.

11         MR. KAUFMAN:  Well, if I may, Your Honor, first of

12    all, you are correct, it was one drug conspiracy, and the

13    objects of the conspiracy were cocaine and marijuana.  So it

14    is one conspiracy.

15         And so I didn't intentionally and correctly use

16    "intertwine" in terms of the drugs, but it was one

17    conspiracy.  But with regards to the way it was charged,

18    really the reason why it came about that way was when this

19    load of marijuana came in, we had no historical information.

20    It was charged because that's what we were aware of.  We

21    were aware of the drugs in hand from the day of the arrest,

22    as well as the firearms that were from the day of the

23    arrest, and then we were aware, for example, Mr. Correa had

24    illegally re-entered the country after the prior conviction

25    and was disqualified from possessing any firearms.

1    But during the course of debriefings and

2  especially, really, in pretrial preparation sessions, we

3  learned the full breadth of the cocaine involving all the

4  people here.  And, in fact, the marijuana was kind of

5  something -- a new part of the conspiracy; that they had

6  been basically more a cocaine trafficking group with people,

7  and that the marijuana was more of a recent thing.  It's

8  more of a kind of an opportunity for the group.

9    THE COURT:  What you're saying there is that the

10  marijuana was a newer drug in the conspiracy.  I don't

11  recall -- that doesn't mean it wasn't there -- I don't

12  recall any evidence by any of the witnesses as to that.  But

13  if I don't recall, point me to a witness that actually said

14  the first drug was cocaine, and marijuana came along later.

15  Because I think that's significant that -- in the Court's

16  analysis.

17    MR. KAUFMAN:  Well, I can say that, for example,

18  Mr. Bayona, Jose Bayona had stated that there were prior

19  purchases of cocaine, and that there was this individual,

20  Johnny, who was the source and was also related to the

21  marijuana on the date of the arrest.  That Johnny had been a

22  source of supply for kilograms of cocaine in the past.  And

23  that Mr. Bayano stated that he knew that Correa knew that

24  Anthony Monroe was buying cocaine from this same person,

25  Johnny.  That Correa had watched over two prior loads of

1  cocaine that Johnny had gotten from California or Phoenix.

2  And that the total amount of those cocaine loads was

3  somewhere between 15, 20 kilos.  So we're talking about very

4  significant amounts.  And that was his testimony related

5  to -- I don't remember if you remember when he described a

6  horn, that was the term, "a horn," was the term for the

7  AK-47 because of the shape.

8              THE COURT:  Yeah, I do remember that.

9              MR. KAUFMAN:  So that was not only debriefing, but

10  in his trial testimony.

11             With regard to -- let's see.  Your Honor, I'm

12  looking through right now just debrief reports.  And for

13  example, Mr. Manzanarez talked about an individual that he

14  had been receiving cocaine from.  He talks about 13 to

15  14 kilograms from the gato, Spanish for "cat," who he had

16  been dealing with for two to three months.

17             THE COURT:  Well, I've reviewed my notes for the

18  sentencing hearing from the trial, and of course, I read the

19  Presentence Report.  There's that the -- the evidence in the

20  record from the trial and from the Offense Conduct section

21  of the Presentence Report does show by preponderance of the

22  evidence that cocaine was clearly one of the drugs involved

23  in this conspiracy, and that is a finding of fact of the

24  court.  It was the issue whether that this started as

25  cocaine conspiracy and morphed over to marijuana and was

1    something that was new to me.  But I don't need to make that

2    ruling.  It doesn't make any difference, I guess, which drug

3    came first, it was just whether both drugs were involved in

4    the conspiracy by a preponderance of the evidence for

5    purposes of Guidelines calculations.

6         MR. KAUFMAN:  I have might add for the record

7    maybe that Gasper Benevides, his debriefing report, and I

8    believe --

9         THE COURT:  I've got in my notes on what he

10   testified to at trial.  He specifically testified to both

11   drugs.

12        MR. KAUFMAN:  And in fact, according to our

13   information, I can't recall the trial testimony, but in his

14   debrief, he stated when he came to the United States, it was

15   for the purpose of selling cocaine.  And I don't know if we

16   went into that much detail at the trial, but that was as far

17   back as 2005.  It was a different source of supply at the

18   time, but that was his whole purpose for coming in the first

19   place.  So I think that it predominantly was cocaine.  I

20   seem to recall --

21        THE COURT:  But Mr. Correa, the defendant, did not

22   need Mr. Gasper Benevides until 2008, according to my notes,

23   that's I guess because of the alleged role -- I shouldn't

24   say alleged because the jury found him guilty -- but the

25   role of this defendant in this conspiracy was as a security

1    man.  Right?

2                MR. KAUFMAN:  Yes, sir.

3                THE COURT:  As a guard.  And that's why he was in

4    possession of the firearms.

5                Anything else from the government on the cocaine

6    issue?

7                MR. KAUFMAN:  No, Your Honor.

8                It's interesting, you had mentioned case law.  I

9    just thought it would be interesting, I don't know if the

10   name "Massias," M-A-S-S-I-A-S --

11               THE COURT:  Colon Messiah.  Jamaica C.  Oh, I know

12   that trial very well since I was sitting or standing exactly

13   where you are standing right now.

14               MR. KAUFMAN:  Yeah, I saw that when I was doing

15   case law research.  It just so happened your name was

16   mentioned in that role.  That's a case that supports the

17   inclusion of the cocaine as a legal matter for purposes of

18   sentencing.

19               THE COURT:  I thought there the district court --

20   it was a visiting judge from the Middle District of

21   Tennessee -- had held me, as an AUSA, to cocaine only

22   because cocaine was what was charged in the conspiracy, but

23   the evidence at trial was every ounce of cocaine, every gram

24   of cocaine was cooked into crack.  And I argued that

25   sentencing should be based on crack, not cocaine.  The

1    district court disagreed, and the Fourth Circuit reversed

2    the district court and resentenced the defendant to a crack

3    level instead of a cocaine level.

4           I mean it's very analogous in the sense that it

5    was a drug different for purposes of Guidelines calculations

6    then the drug charged in the indictment.  That's right on

7    point.  I agree with you there.  The drugs were different

8    there.

9           MR. KAUFMAN:  Yes, Your Honor.

10          THE COURT:  I know that case very well.

11          Mr. Lee, you might have been -- do you remember

12   the Consort Inn defendants.  I'm sure you represented one or

13   two of them.

14          MR. LEE:  You have a much better memory.  I can't

15   remember what I did yesterday some days, but they all blend

16   in after a while.

17          It was interesting to hear the exchange of case

18   law and things like that.  Yet the law does change from time

19   to time, if the Court will allow me to briefly, not rebut

20   but respond to what the government has --

21          THE COURT:  Absolutely.  I was going to allow

22   you that.

23          MR. LEE:  My point in filing the objections was

24   really this:  To preserve what we did at trial.

25          THE COURT:  Right.

1    MR. LEE:  My recollection is that I filed

2 objections or requested instruction, I think, on multiple

3 conspiracies, kind of dovetailed with whether it was

4 marijuana or cocaine.

5    THE COURT:  And I believe -- I did include that

6 instruction.

7    MR. LEE:  I believe you did.

8    THE COURT:  Because I don't think Mr. Kaufman

9 wanted me to, but I thought it was an issue the jury needed

10 to decide, and I think they did decide by returning the

11 verdict they did.

12    MR. LEE:  I wouldn't concede that --

13    THE COURT:  I understand that.  I understand

14 you're not conceding that, but that would be logical

15 conclusion they conclude it would be one conspiracy.

16    MR. LEE:  That would be a logical.  It's not the

17 one we would like but it would be a logical conclusion.

18    And I really can't respond about what Mr. Kaufman

19 has said about the facts of the case.  For me the objection

20 hopefully comes down to what was the conspiracy for which

21 Mr. Correa was indicted on which he was found guilty.  I

22 contend it was a marijuana conspiracy.  At that point the

23 sides break down.

24    I would contend that his involvement foreseeably

25 was for marijuana.  He may have been involved in other

1    matters but those were outside the conspiracy.  And again

2    it's a question of fact for the Court to find ultimately.  I

3    made the objection but as we all know, the sentencing law

4    seems to be changing rapidly, and with two, three new

5    Supreme Court justices, I don't know where we'll be in a

6    two, three years.

7              THE COURT:  No.  That's very prudent.  And I agree

8    with you preserving your client's rights.

9              MR. LEE:  Yes, sir.

10             The other side is, and this is more of an

11   editorial comment, but over the years it just strikes me --

12   and I'm aware of the Tenth Circuit case in *Singleton*, but

13   when the government is allowed to bring in facts and

14   evidence by offering 5Ks and downward departure motions,

15   almost as a matter of due process, that puts the defense at

16   a disadvantage because we can't bring in witnesses, you

17   know, who are --

18             THE COURT:  Who are not cooperating.

19             MR. LEE:  Exactly.

20             THE COURT:  The others, those alleged to be

21   co-conspirators who were charged but are denying their

22   involvement.

23             MR. LEE:  That's right.  So we can't bring in

24   witnesses who are -- you know, that are antithetical to what

25   Mr. Kaufman is because we don't have that power and that

1    authority.  And I just offer that editorial because it's not

2    something we can do about that today.  I'm not asking the

3    Court to rule upon that because we're not there yet.

4            THE COURT:  No.  Although I've stood and sit where

5    Mr. Kaufman now sits, I have stood and sat where you now are

6    standing, so I've seen both sides of the prosecution and

7    defense and their burden that each has, and it makes it -- I

8    think it makes for a very fair system because we have this

9    adversarial system with strong advocates from each side.

10           MR. LEE:  The system is fair, but I feel like the

11   relative power positions of the parties are somewhat stilted

12   because as a defendant, we can't bring witnesses who would

13   exonerate my client and give that person, the witness, a

14   downward departure for telling the truth, although I would

15   opine politically that the government benefits just as well

16   by the exoneration of the defendant as by conviction, and

17   substantial assistance and cooperation should even be that

18   which exonerates somebody, but the law, it's not there yet.

19   May never be.

20           THE COURT:  I do believe there are times that the

21   government will dismiss charges against an alleged

22   co-conspirator; that because of the cooperation of other

23   co-conspirators, they learn that the co-conspirator that has

24   been -- who is charged as a co-conspirator really isn't

25   involved in conspiracy, but just happens to be an associate

1    or friends of the conspirator.  So I have seen defendants --

2    charges dismissed because of substantial assistance by

3    others.

4              MR. LEE:  And I have, too.  I'm not maligning the

5    government.  I've seen that throughout my 20-plus years of

6    practice, very much so.  But when you start splitting hairs

7    on whether a defendant is involved in a conspiracy within a

8    certain time frame, over a certain drug, then I think it

9    becomes, really, much more of an equal playing field, with

10   all due respect.  But it is what it is.

11             I have nothing honestly to point to suggest that

12   Mr. Kaufman's witnesses are prevaricating or lying,

13   indulging or minimizing anything.

14             THE COURT:  I appreciate that, Mr. Lee.  Thank

15   you.

16             MR. LEE:  Yes, sir.

17             THE COURT:  For the reasons previously stated, the

18   objection to including cocaine as a drug in the drug amount

19   calculations is overruled based on current state of the law

20   and based on this Court's finding by a preponderance of the

21   evidence that cocaine was involved in this conspiracy.

22   Although cocaine is not referenced in the grand jury Bill of

23   Indictment, and the issue of cocaine was not sent to the

24   jury as to a drug amount -- I guess the marijuana -- was the

25   marijuana included as a drug amount?

1          MR. KAUFMAN:  Marijuana was 100 kilograms or more.

2          THE COURT:  It had to for the statutory minimum

3     application.  And the jury did find 100 kilograms or more.

4     And, of course, that finding of fact by the jury only

5     applies to the statutory minimum.  It does not apply to the

6     Sentencing Guidelines.

7          All right, then the Court will adopt the

8     information contained in the Presentence Report for the

9     purposes of applying the Guidelines.

10          In the instant case, the Guidelines provide for an

11    offense level of 34, Criminal History Category II, and a

12    Guideline sentencing range on Counts One, Five and Six of

13    168 to 210 months, and in addition, Count Four, the 924(c),

14    a statutory sentence of 60 months consecutive to whatever

15    the Court sentences the defendant on Counts One, Five and

16    Six.

17          Do the parties agree that based on the Court's

18    ruling that cocaine is included in the drug amount

19    calculation that those are the appropriate advisory

20    Guidelines, and there is the statutory consecutive sentence

21    of 60 months?

22          MR. LEE:  I would agree with the Court's

23    conclusions, just to make sure we're building a good record,

24    I would respectfully renew my objections, but I agree with

25    the Court.  That's correct.

1      THE COURT:  Your objection to cocaine being

2  included is preserved.

3      MR. LEE:  Yes, sir, but otherwise is, you know,

4  otherwise the applicable Guideline range, and statutory

5  parameters as the Court states them.

6      THE COURT:  All right.  Mr. Lee, I'll hear from

7  you on behalf of your client.

8      MR. LEE:  Your Honor, I really would just argue

9  for a sentence within the Guideline range and would

10  respectfully ask the Court to consider a range at the low

11  end of the Guidelines.  There really isn't much more I can

12  or probably should say for reasons that are known to me, but

13  would ask the Court to consider a low end Guideline range.

14      THE COURT:  All right.  Thank you very much.

15      Mr. Correa, you have the right to address the

16  Court if you so chose.

17      DEFENDANT CORREA:  (Through interpreter)  The only

18  thing I have to say is I'm sorry for what has happened, and

19  it's all in your hands now for you to give me the sentence.

20      THE COURT:  All right.  Thank you very much, sir.

21  All right.  You may sit down.  Mr. Kaufman.

22      MR. KAUFMAN:  Thank you, Your Honor.

23      There's not too much more to say.  Your Honor

24  heard the trial testimony.  But we do submit that in the

25  range of 168 to 210 months.  We're not asking for an upward

1   departure, but we are asking for the high end of the range.

2          Mr. Correa is not just -- was not just involved in

3   this drug trafficking offense and the weapon man, the gunman

4   for it.  I note when one looks at his history and where he's

5   going after this, we have, for example, in 2003, he has an

6   assault involving a traumatic condition, with the way it's

7   worded, and an assault of force likely to produce great

8   bodily injury.  So his past violence is catching up with him

9   once again in terms of using weapons in drug trafficking to

10  include an assault rifle.

11         And ultimately, Your Honor, we have been in

12  contact, very close contact in the past with the California

13  authorities, and they are preparing to bring murder charges

14  against Mr. Correa.  So his past and his future or linked to

15  this instance crime, therefore we do ask for 210 months.

16         THE COURT:  Let me ask you before you go into what

17  you're proposing:  To what extent am I permitted to use a

18  hearsay reference by a law enforcement agency in California

19  that they are intending to bring murder charges?

20         MR. KAUFMAN:  Well, Your Honor, I don't think that

21  that's necessarily the be all, end all for the purposes of

22  sentencing Mr. Correa.  I think the facts of the case merit

23  it, and I think it's relevant in terms of his prior

24  conviction showing that it's not just a one off; that he

25  was -- the gunman, he has a prior record for crime, and

1　　there's an allegation -- and I don't even know what the

2　　status of any charging is -- I know they were going through

3　　the process of obtaining DNA for the purpose of their

4　　prosecution.  I believe that while Mr. Correa was in

5　　Gastonia jail, they obtained some DNA to connect him to

6　　various pieces of evidence that would corroborate the

7　　testimony as well.  I don't know what his status is so I

8　　would not put great weight on it, Your Honor.  I think you

9　　are permitted to the consider anything that you consider

10　　relevant for sentencing purposes.

11　　　　　　THE COURT:  Well, as Mr. Lee is pointing out, for

12　　the last two years, 18 months, we've had some stability in

13　　sentencings.  But, of course, in the last three to

14　　six months in the Fourth Circuit, it's become clear that the

15　　Fourth Circuit is very concerned about district courts

16　　properly following sentencing procedure from the Supreme

17　　Court, and properly doing a substantive analysis of the

18　　sentencing factors.  And because of that kind of oversight,

19　　the proper oversight, I just want to make sure I know what I

20　　can consider and not consider in sentencing factors

21　　analysis.

22　　　　　　MR. KAUFMAN:  I believe you could consider it,

23　　Your Honor.  Like I say, if Your Honor says you don't even

24　　want to consider it, I think the fact he has a very serious

25　　assault in his past, along with the types of the weapons he

1    possessed in the instant crime and what his role were, those

2    in and of themselves shows dangerousness and would merit the

3    high end, so Your Honor doesn't even need to consider the

4    factual, the pending matters in California.

5           THE COURT:  I appreciate that.  Thank you very

6    much, Mr. Kaufman.

7           MR. LEE:  I'll stick my neck out and invite error.

8           I would take Mr. Kaufman's position and suggest to

9    the Court that if, in fact, Mr. Correa is facing murder

10   charges or may be facing murder charges in California, the

11   Court ought to consider that and go with the low end of the

12   Guidelines, bearing in mind there may be further sanctions

13   down the road.  That's kind of an awkward twist on this

14   whole thing, but I'm trying to take his energy and turn it

15   around, use it to our advantage.  The cow is out of the barn

16   so it's there before the Court.  But beyond that, I would

17   ask for the low end of the Guidelines, Your Honor.

18          THE COURT:  Thank you very much, Mr. Lee.  I

19   appreciate your argument.

20          All right.  Just for the record, so there's no

21   misunderstanding as to why there was a sidebar between only

22   the Court and Probation Office, that was just to clarify,

23   remind the Court of the statutory maximum that applies to

24   Counts Five and Six of 120 months each, just so the Court

25   properly articulates a sentence when it does articulate a

1   sentence.

2           When we did a discussion of the Guidelines a few

3   moments ago, I said Counts One, Five and Six have a range of

4   168 to 210.  Technically that's correct for a Guideline

5   calculation, but it's not correct for purposes of the

6   statutory maximum on Count Five and Six.  They can only go

7   to 120.

8           Mr. Kaufman, wasn't there a forfeiture in this

9   case?

10          MR. KAUFMAN:  There was, Your Honor, for the

11  firearms in question.

12          MR. LEE:  We agreed to that.  I think there was a

13  Consent Order.

14          THE COURT:  I believe there was.  I want to make

15  sure that's referenced in the J&C.

16          MR. KAUFMAN:  It's Document 138.

17          THE COURT:  Thank you.  All right.  Mr. Correa,

18  please stand.

19          Mr. Correa, the U. S. Supreme Court, in a series

20  of decisions, has laid out a three-step process that this

21  Court must follow in determining the appropriate and

22  reasonable sentence in each case.  This process is an

23  individualized sentencing process.  I have to tailor this

24  sentence based specifically on your criminal conduct and

25  your facts and circumstances.

1          The first step in this three-step process is to
2    work through the advisory Sentencing Guidelines.  And I do
3    want to say the Guidelines are only advisory.  They are not
4    binding on this Court.  But the Supreme Court says we should
5    work through the Sentencing Guidelines because they give
6    judges a starting point in the analysis for the appropriate
7    sentence in each case.
8          As the Court has already stated, under the
9    Guidelines you were subject to 168 to 210-month sentence,
10   plus 60 months consecutive to that term of 168 to
11   210 months.  The 60 months is a part of actually the second
12   step in the sentencing process.
13         The second step is to determine if a statutory
14   minimum sentence applies as to any of your counts of
15   conviction.  And the 60-month sentence does apply to your
16   count of conviction, Count No. 4, violation of possessing a
17   firearm during and in relation to a drug-trafficking crime.
18   So the Court must sentence you to 60 months consecutive;
19   that is in addition to whatever the Court sentences you for
20   the other counts of conviction.
21         The third and most important step is to work
22   through a series of sentencing factors that are set forth in
23   Title 18, United States Code 3553(a).  Those sentencing
24   factors were developed by Congress to guide courts in
25   determining the appropriate and reasonable sentence in each

1    case, and specifically to ensure the Court determines a

2    sentence that's sufficient but not greater than necessary to

3    accomplish the goals of sentencing.

4           The Court has conferred all the sentencing factors

5    in Section 3553(a) and it wants to highlight a few that are

6    particularly important in this is case.  First the Court

7    wants to highlight the nature and circumstances of this

8    offense.

9           Although this was not the highest ranking

10   conspiracy, in other words, this conspiracy wasn't tied to

11   the highest levels of drug trafficking in Mexico, this was a

12   very sophisticated small conspiracy that involved shipping

13   large quantities of marijuana from the Mexican border all

14   the way deep into United States, smuggling that marijuana

15   into the United States, as far as Union County, North

16   Carolina, some 1500 miles away from the US-Mexican border.

17   And, of course the marijuana was smuggled in in concrete

18   pillars, what looked like statutes, but of course they had

19   marijuana underneath the concrete, so it was a sophisticated

20   conspiracy.  And the evidence at trial included not only the

21   marijuana smuggling of August 2009 -- excuse me, of July

22   2008 -- I was looking at the wrong date -- of July of 2008,

23   but it also showed that you were involved in cocaine

24   distribution over an extended period of time.

25           So this, like I say, was a sophisticated and

organized drug conspiracy involving at least two controlled substances.

And not only is the nature and circumstances of the offense severe, this is a serious offense, and the sentence the Court needs to impose needs to reflect the seriousness of the offense. It likewise needs to promote respect for the law. That includes not only U. S. drug laws, but it also involves laws related to firearms and laws relating to the illegal presence in the United States.

I believe virtually all the defendants in this case were undocumented aliens or illegal aliens. I'm not aware of any that were legally within the United States. Mr. Kaufman?

MR. KAUFMAN: Well, Anthony Monroe we believe was a citizen.

THE COURT: You're right. Anthony Monroe. I stand corrected. Mr. Monroe was legally in the United States, was a U. S. citizen.

MR. KAUFMAN: There may have been somebody who was a resident alien, had a Green Card. I'm not sure, though, Your Honor.

THE COURT: But the vast majority of perpetrators of this offense, the co-conspirators, were all not paying respect to U. S. law on immigration, as well as on drug distribution and improper or illegal gun possession.

1    The Court has looked at your criminal record and

2    you do have a serious criminal record.  The Court is

3    concerned that it needs to deter you specifically from

4    further criminal conduct.  As Mr. Kaufman pointed out, you

5    were convicted of assault with a weapon likely to produce

6    great bodily injury in California, and also convicted of

7    inflicting corporal injury on a spouse.  Of course, that

8    was -- those crimes were the underlying crimes that resulted

9    in your conviction for possession of a firearm by an

10   individual with a prior domestic violation conviction.

11   So you have a history of committing violent acts,

12   and as the offense conduct sets forth in the Presentence

13   Report, and evidence at trial showed, you were also the

14   enforcer or the security man that used firearms to actually

15   protect this drug conspiracy.  So the Court needs to deter

16   you from further criminal conduct.

17   Likewise the Court needs to protect the public

18   from others like yourself who might get into this type of

19   criminal conduct, so the Court is concerned about the

20   general and specific deterrence.

21   Now, with that said, the Court does recognize that

22   you're a relatively young man, and although you are facing a

23   very lengthy term of imprisonment, you should be released

24   from federal prison when you're middle-aged, and you will

25   have a life in front of you.  And I truly do hope you focus

1    on your future when you're in the U. S. Bureau of Prisons.

2         The U. S. Bureau of Prisons will provide you

3    rehabilitation.  And the sentence I intend to impose should

4    provide you adequate time to go through

5    educational/vocational training.  You will have the

6    opportunity to learn English.  You'll have the opportunity

7    to complete a high school degree.  You'll have the

8    opportunity to go through automobile mechanics training and

9    so many other vocational training programs at the U. S.

10   Bureau of Prisons that when you are released, even though

11   when you're released it is very probable you'll be deported

12   from the United States, wherever you end up, you will have

13   the skills necessary to avoid committing crimes in the

14   future, whether it's Mexican crimes or crimes in the United

15   States.  So I do hope you take advantage of the

16   rehabilitative opportunities in the U. S. Bureau of Prisons.

17   That's a sentencing factor this Court has consider.

18        The Court also wants to avoid unwarranted

19   sentencing disparity among similar situated defendants.

20        In this particular case you were, it appears from

21   this Court record, the defendant who is the greatest threat

22   to the safety of the community.  Other defendants in this

23   case were low-level players; most of them didn't even have a

24   criminal record.  They certainly didn't have any violent

25   criminal record.  And many defendants in this case provided

1  substantial assistance to the United States in furthering

2  the government's investigation.

3          You will have a significantly higher sentence than

4  your co-conspirator but that's because of these

5  distinguishing factors, so your sentence I believe will be

6  appropriately comparable based on your role in the offense,

7  as well as your failure to cooperate with authorities or to

8  admit your guilt.  So the Court is trying to avoid any

9  unwanted sentencing disparity, and the Court believes your

10 sentence would be consistent based on your role in the

11 conspiracy and your lack of cooperation.

12         With that said, the Court has considered all the

13 sentencing factors.  It has highlighted some of the

14 sentencing factors that it believes are particularly

15 important.  The Court will now state a sentence that it

16 believes is sufficient but not greater than necessary to

17 accomplish the goals of sentencing.  The Court would invite

18 the attorneys to listen to the proposed sentence before it's

19 actually imposed so if there's a legal reason why it should

20 not be imposed, you can so state.

21         The Court will now state its proposed sentence:

22         Pursuant to the Sentencing Reform Act of 1984 and

23 *United States v. Booker*, it is the judgment of the Court,

24 having considered the factors noted in 18 U.S.C., Section

25 3553(a), that the defendant, Asdrubal Rodriguez Correa, is

hereby committed to the custody of the Bureau of Prisons to
be imprisoned for a term of 188 months on Count One,
120 months on Counts Five and Six, all three counts, One,
Five and Six to be served concurrently; and 60 months on
Count Four to be served consecutively, for a total of
248 months.

The Court calls to the attention of the custodial
authorities that the defendant has a history of substance
abuse and recommends the defendant be allowed to participate
in any available substance abuse treatment programs while
incarcerated, and if eligible, received benefit of 18 U.S.C.
Section 3621(e)(2).

Upon release from imprisonment -- one moment.

Upon release from imprisonment, the defendant
shall be placed on supervised release for a term of ten
years on Count One, and five years on each of Counts Four,
Five and Six, to be served concurrently.  And in accordance
with established procedures by the Immigration and
Naturalization Act, 8 U.S.C. Section 1101, the defendant,
upon release from imprisonment, is to be surrendered to a
duly authorized immigration official for deportation.

As a further condition of supervised release, if
ordered deported, the defendant shall remain outside the
United States.  Should deportation not occur, the defendant
shall report in person within 72 hours of release from the

1  custody of the Bureau of Prisons, or the Bureau of

2  Immigration and Customs Enforcement, to the probation office

3  in the district to which the defendant is released.  While

4  on supervised release, the defendant shall not commit

5  another federal, state or local crime, and shall comply with

6  the standard conditions that have been adopted by the Court

7  in the Western District of North Carolina.

8        It is further ordered that the defendant shall pay

9  to the United States a special assessment of $400.

10       It is further ordered having considered the

11  factors noted in 18 U.S.C. Section 3572(a) that the

12  defendant shall reimburse the United States for

13  court-appointed attorneys' fees.

14       The Court finds that the defendant does not have

15  the ability to pay a fine or interest.  The Court having

16  considered the factors noted in 18 U.S.C., Section 3572(a)

17  will waive payment of a fine and interest in this case.

18       Defendant shall forfeit the defendant's interest

19  in any properties as identified by the United States, and in

20  particular by the firearm possessed in furtherance of the

21  crimes for which the defendant was convicted, and the Court

22  incorporates by reference the Preliminary Judgment of

23  Forfeiture, which is Document 138 in the CM/ECF file.

24       Payment of the criminal monetary penalty shall be

25  due and payable immediately.  The Court has considered the

1   financial and other information contained in the Presentence

2   Report and finds the following is feasible:  If the

3   defendant is unable to pay any monetary penalty immediately,

4   during the period of imprisonment payment shall be made to

5   the Federal Bureau of Prisons Inmate Financial

6   Responsibility Program.

7          Upon release from imprisonment any remaining

8   balance shall be paid in monthly installments of no less

9   than $50 to commence within 60 days after release from

10  imprisonment until paid in full.

11         Throughout the period of supervision the probation

12  officer shall monitor the defendant's economic

13  circumstances, and shall report to the Court with

14  recommendations as warranted any material changes that

15  effect the defendant's ability to pay any court-ordered

16  penalties.

17         Now, I ask counsel -- first I should ask Mr. Lee:

18  Would you like to recommend a place of designation?

19         MR. LEE:  Probably some place in Texas or

20  California, some place close --

21         THE COURT:  To the border.

22         The Court would recommend to the U. S. Bureau of

23  Prisons that the defendant be designated to a facility close

24  to the US-Mexican border.

25         Now I ask counsel if there's any legal reason why

1    this sentence should not be imposed as stated?

2            MR. KAUFMAN:  No, Your Honor.

3            MR. LEE:  If I could just say for point of

4    clarification, Your Honor, during the Court's pronouncement

5    of the judgment, prospective judgment, the Court indicated

6    Mr. Correa, one of the factors the Court would consider in

7    crafting the sentence was that he had not cooperated but

8    pled guilty.  I'm not quite sure if I heard that correctly.

9    I think the Court was trying to explain why the other

10   sentences were lower.

11           THE COURT:  Well, but he started to cooperate,

12   right?

13           MR. LEE:  No, he did not.

14           THE COURT:  He never started to cooperate.  That's

15   what I thought, he never cooperated.

16           MR. LEE:  He didn't.

17           THE COURT:  There was a moment I thought -- you

18   were not his first attorney?

19           MR. LEE:  I think I've always been his first

20   attorney.  I didn't look at that closely but --

21           MR. KAUFMAN:  It's probably two sides of same

22   coin.  It's not that he's getting a greater sentence because

23   he didn't cooperate, it's that many of the other defendants

24   that are --

25           THE COURT:  If I misstated, it's correct -- the

```
 1    other defendants -- a certain number of the defendants
 2    received 5K motions.  Other defendants qualified for the
 3    safety valve.  Your client could not possibly qualify for
 4    the safety valve because of his criminal record, and he did
 5    not provide the substantial assistance that would qualify
 6    him for a downward departure.
 7              MR. LEE:  And I just want to clarify for the
 8    record the Court wasn't penalizing --
 9              THE COURT:  No.  You are absolutely correct, and
10    thank you for that clarification.  Their sentences -- their
11    Sentencing Guidelines ranges came down, not that his went
12    up.
13              MR. LEE:  I just wanted to clarify that, Your
14    Honor.
15              THE COURT:  Thank you.  That's why the Court
16    doesn't believe they're dissimilar in their analysis.  The
17    process was the same in an analysis of all sentences.
18              The Court actually did make a technical statement,
19    a misstatement, as to supervised release for Counts Five and
20    Six.  Count Four the Court properly said the defendant would
21    receive five years of supervised release.  The Court also
22    said five years for Counts Five and Six, but Counts Five and
23    Six have a three-year cap on supervised release.  So let me
24    restate that one sentence.
25              Upon release from imprisonment, the defendant
```

1    shall be placed on supervised release for a term of ten

2    years on Count One, and five years on Count Four, and three

3    years on each of Counts Five and Six, all to be served

4    concurrently.

5              All right.  Mr. Correa, you can appeal your

6    conviction if you believe that your guilty verdict was

7    somehow unlawful or there was some defect in your trial or

8    proceeding.  You also have a statutory right to appeal your

9    sentence under certain circumstances, particularly if you

10   think the sentence is contrary to law.

11             Any notice of appeal must be filed within ten days

12   from the date of written judgment in this case.  This Court

13   hands down written judgment usually one to two weeks after

14   this sentencing hearing.  If you're unable to pay the cost

15   of appeal, you may apply for leave to appeal no cost to you.

16   If you so request, the clerk of court will prepare and file

17   a notice of appeal on your behalf.  The Court recommends you

18   talk to Mr. Lee about these appeal rights and procedures.

19             Do you understand these appeal rights and

20   procedures as the Court has stated them to you?

21             DEFENDANT CORREA:  Yes.

22             MR. LEE:  I said this for Mr. Correa, but I will

23   file the notice, since this was a jury trial, and I just

24   wanted him to know that walking out that I will not let this

25   slide.

1        THE COURT:  All right.  It appreciate it.  Thank

2   you, sir.

3        Sir, you will remain in the custody of the

4   U. S. Marshal Service here in a local facility pending

5   transfer to the U. S. Bureau of Prisons.  That process

6   usually takes 30 to 60 days.  At the end of the service of

7   your sentence in federal prison, you will be transferred to

8   the Immigration and Customs Enforcement Agency, or bureau,

9   for a purposes of a deportation hearing.  That transfer is

10  not something that will move from one federal facility to

11  another; rather, it will be a paper or administrative

12  transfer but you will still probably be housed at the

13  federal facility that you are -- that you were serving in

14  during the term of your sentence.

15       Do you have any questions for me, sir?

16       DEFENDANT CORREA:  No.

17       THE COURT:  Any questions for counsel?

18       MR. KAUFMAN:  No, Your Honor.

19       MR. LEE:  We have none, Your Honor.  Thank you.

20       THE COURT:  Then the sentence as stated and as

21  amended is hereby ordered and this case is concluded.

22       (Hearing conclude 2:53 p.m.)

23                    - - - - -

24

25

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**

**CERTIFICATE OF REPORTER**

I, JOY KELLY, RPR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

S/JOY KELLY

**JOY KELLY, RPR, CRR**                    **Date** _____
**U.S. Official Court Reporter**
**Charlotte, North Carolina**